UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Shamekia Mcfadden

    Plaintiff,

v.                                          CASE NO. 6:23-cv-01914

Empower Finance, Inc.

    Defendant

_____/

# CLASS ACTION COMPLAINT

## INTRODUCTION

1. Americans receive billions of spam text messages every year.

2. Empower Finance, Inc. ("Empower Finance") is responsible for a significant portion of this spam.

3. Like most Americans, Shamekia Mcfadden ("Mcfadden") and class members have a mobile residential telephone.

4. Being mobile, Mcfadden and class members take their phones everywhere. They use their phones to receive and make important calls, to get emergency information, and to send text messages to family members and friends. They use their phones in their homes and for their personal enjoyment.

5. But their homes, phones, and privacy have been invaded by Empower Finance's spam text messages.

6. Mcfadden and members of the classes have no relationship with Empower Finance, have no account with Empower Finance, have never provided

any phone number to Empower Finance, and have never agreed for Empower Finance to send any type of communication.

7. Mcfadden, and some class members, have tried to eliminate the harassment and invasion of privacy from unauthorized text messages by registering their phone number on the National Do Not Call Registry ("DNCR"), but even that did not work.

8. Empower Finance simply blasts text messages without caring whether they had consent, whether the recipient had asked for the calls to stop, or whether the recipient was on the DNCR.

9. "Robocalls and robotexts are nuisances. Congress banned them in the Telephone Consumer Protection Act of 1991 ('TCPA'). But as every American knows, there are companies—like the defendant in this case—who refuse to get that message while collectively sending millions of others." *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021).

10. Mcfadden brings this action for herself and for other similarly situated people to enjoin these abusive practices and for damages.

## JURISDICTION AND VENUE

11. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the TCPA. 47 U.S.C § 227.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a significant portion of the events giving rise to this lawsuit occurred in this district.

## PARTIES

13. Plaintiff Shamekia Mcfadden is a resident of Orlando, Florida.

14. Defendant Empower Finance, Inc. is a Delaware Corporation with its principal place of business in San Francisco, California.

## FACTUAL ALLEGATIONS

15. Mcfadden's home, phone, and privacy have been invaded by Empower Finance's non-emergency text messages.

16. Mcfadden is the residential subscriber of the cell phone number 863-484-3066. Mcfadden uses this number for personal use. Mcfadden uses this phone number at home. Mcfadden makes and takes her personal calls on this phone number. Mcfadden does not use this phone number in any business.

17. Mcfadden registered 863-484-3066 on the DNCR to stop telephone solicitations on August 2, 2018.

18. Mcfadden never provided 863-484-3066 to Empower Finance, never had a relationship with Empower Finance, and never gave permission for Empower Finance to send any type of communication.

19. Empower Finance has knowingly and willfully texted Mcfadden at least seven times, all coming from the short code, "41599." Some examples of these messages are:

    i. From short code 41599 on August 2, 2022:
    Empower: Your free trial starts now! Sign up for the Empower Card to get instant delivery of your Cash Advance at no cost (eligibility applies). You'll thank yourself later: bit.ly/EmpowerBegin Msg&data rates may apply. Text 'STOP' to quit.

    ii. From short code 41599 on August 2, 2022:
    Welcome to Empower! We're excited to help you unlock your financial potential. Message and data rates may apply. Message frequency varies. Reply HELP for help. Reply STOP to opt out. Email help@empower.me for support.

    iii. From short code 41599 on October 10, 2022:
    Hi Shamekia! Empower here. Looks like you are a few days from your next paycheck, and a Cash Advance may help you avoid

overdrafting. Unfortunately, we are unable to connect to your Chime account and cannot offer Cash Advance until the connection is fixed. Re-login via the Empower app today:

https://open.empower.finance/institutionerror?notificationtype=CardInstitutionAccountError&account_id=5447400

https://open.empower.finance/institutionerror?notificationtype=CardInstitutionAccountError&account_id=5447400

20. The sender of the text messages, from short code 41599, did not properly disclose their individual name, nor the full legal name of the entity that sent the texts.

21. The text contained links in the messages directing the recipient to websites and/or e-mail addresses for domains owned and/or controlled by Empower Finance. Empower.me is an example of one such website/domain. The terms and conditions page for Empower.me identifies Empower Finance as the owner of Empower.me.

22. By information and belief, Empower Finance owns and controls the short code sending these texts, as well as the websites where the recipient is directed to link contained in the body of the texts.

23. Empower Finance initiated the text messages for the purpose of encouraging the purchase of "financial technology" products and/or services, including cash advances, credit cards, and other products expressly offered for purchase on their own website.

24. Empower Finance initiated the text messages using an automated system. This is based on the following facts:

    i. Several of the text messages were generic and impersonal suggesting they were sent to many people;

    ii. Empower Finance withheld its identity in the text messages;

      iii. the text messages provided mechanical opt-out instructions, which is not something an individual does but instead is something an autodialer does;

      iv. the text messages came from an SMS short code which is not possible with a regular telephone;

      v. several people have reported getting unsolicited text messages from Empower Finance;

25. Empower Finance stored or produced Mcfadden's telephone number using a random or sequential generator. This is based on the following facts:

      i. Mcfadden never provided her phone number to Empower Finance, indicating that the number was randomly generated;

      ii. Mcfadden has no relationship with Empower Finance, has no account with Empower Finance, has never provided any phone number to Empower Finance, and has never agreed for Empower Finance to send any type of communication;

      iii. if Empower Finance had acquired Mcfadden's phone number in a proper way, Empower Finance would have disclosed its name in the text messages;

26. On information and belief, Empower Finance initiates and makes tens of thousands of similar text messages to thousands of people.

27. The unwanted spam is incredibly annoying, distracting and frustrating to Mcfadden and the class members. The spam invades their substantive right to privacy, namely the right to be free from unsolicited text messages. Who keeps calling them and why? How can they get it to stop? Why are these spammers wasting their time? When the spammers hide their identity, it hinders Mcfadden and class members from enforcing their rights to determine the purpose of the call, to make a do-not-call request, and to monitor compliance with the TCPA. It makes

people worry if their phones have been compromised. The spam causes Mcfadden and class members to avoid looking at their phones when it may be important or interrupting other activities to respond to unwanted text messages. The spam reduces their phones' storage and battery life. In short, the spam invades their privacy, diminishes the value of their phones and their enjoyment of life, and causes a nuisance, an annoyance, and an intrusion into their seclusion.

28. By initiating text messages to Mcfadden, Empower Finance has harmed Mcfadden and the class members in the exact way Congress sought to protect in enacting the TCPA.

## LEGAL STANDARD

29. **Autodialed Text messages**. The TCPA prohibits text messages to cell phones using an automatic telephone dialing system ("ATDS") except for "emergency purposes" or with the "prior express consent" of the texted party. 47 C.F.R. §64.1200(a)(1). Text messages that introduce an advertisement or constitute telemarketing require "prior express written consent." 47 C.F.R. § 64.1200(a)(2).

30. **National Do Not Call Registry**. Residential telephone subscribers who do not want to receive telephone solicitations may place their phone number on the national DNCR. 47 C.F.R. § 64.1200(c)(2). The TCPA proscribes callers from making "any telephone solicitation to… [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2). Wireless telephone subscribers are allowed to place their number on the DNCR. 47 C.F.R. § 64.1200(e).

31. **Identification of Caller**. The TCPA requires telemarketers to disclose the name of the individual caller and the name of the person or entity on whose behalf the call is being made. 47 C.F.R. § 64.1200(d)(4). "The FCC clarified that providing a d/b/a in a telemarketing message is permissible, but it is insufficient to

fully comply with Section 64.1200(d)(4)." *Robison v. 7PN, LLC*, 569 F. Supp. 3d 1175, 1185 (D. Utah 2021) (citing *Rules and Regulations Implementing the TCPA*, 68 Fed. Reg. 44144, 44163 (July 25, 2003)).

32. **Text Messages Are Calls**. Both phone calls and text messages qualify as a "call." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156, 136 S. Ct. 663, 667, 193 L. Ed. 2d 571 (2016), as revised (Feb. 9, 2016); *Satterfield v. Simon Schuster*, 569 F.3d 946, 952-54 (9th Cir. 2009) (citing *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Red. 14014, 14115 ¶ 165, 2003 WL 21517853).

## CLASS ACTION ALLEGATIONS

33. Pursuant to Civ. R. 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, Mcfadden brings this action on behalf of herself and the following Classes of persons similarly situated in order to remedy the ongoing unlawful practices alleged herein and to seek redress on behalf of all those persons who have been harmed thereby, including injunctive relief.

34. **Class Definitions**. Mcfadden proposes the following Classes:

> **The National DNCR Class**
> All people in the United States (1) to whom Empower Finance initiated more than one telephone solicitation within any 12-month period, (2) to their residential cellular telephone number, (3) while their phone number was listed on the national Do Not Call Registry, (4) in the four years from the filing of this action through the date of class certification.
>
> **The ATDS Class**
> All people in the United States (1) to whom Empower Finance initiated one or more text messages to their cellular telephone, (2) using the same equipment or type of equipment utilized to initiate text messages to Mcfadden, (3) in the four years from the filing of this action through the date of class certification.

> **The Failure to Identify Class**
> All persons in the United States (1) to whom Empower Finance initiated more than one telemarketing text message within any 12-month period, (2) to their residential cellular telephone number, (3) without disclosing the name of the individual initiating the text message and the name of the entity on whose behalf the text messages were made, (4) four years from the filing of this action through the date of class certification.

35. A member of a class may sue as a representative party if the member satisfies Federal Rule of Civil Procedure 23(a)'s four prerequisites: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a).

36. If Rule 23(a) is satisfied, a putative class representative must also show that the class falls into one of three categories under Rule 23(b). Fed. R. Civ. P. 23(b). For a Rule 23(b)(3) class, a plaintiff must make two further showings. First, a plaintiff must show that questions of law or fact common to class members predominate over any questions affecting only individual class members. *Id*. Second, a plaintiff must demonstrate class action is superior to other available methods for adjudicating the controversy.

37. **Numerosity**. A proposed class satisfies the numerosity requirement if class members are so numerous that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). Here, the Classes are so numerous that joinder of all members would be impracticable. The exact size of the Classes and the identity of the members are readily ascertainable from business records and likely number in at least the thousands.

38. **Commonality**. A proposed class satisfies Rule 23's commonality requirement if there is at least one question of fact or law common to the class. Fed. R. Civ. P. 23(a)(2). It is not a high standard. The claims must depend upon a common contention such that the determination of its truth or falsity will resolve

an issue that is central to the validity of each claim in one stroke. The word 'question' in Rule 23(a)(2) is a misnomer: What matters to class certification is not the raising of common questions but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.

39. There are questions of law and fact common to the proposed Classes, including:

   i. Did they receive text messages from Empower Finance?
   ii. Were their numbers registered on the DNCR?
   iii. Did Empower Finance use an ATDS?
   iv. Did the text messages properly disclose the identity of Empower Finance?
   v. Were the text messages for an emergency purpose?

40. **Typicality**. A proposed class representative's claims and defenses must also be typical of the class. Fed. R. Civ. P. 23(a)(3). The Supreme Court has recognized that the commonality and typicality requirements of Rule 23(a) tend to merge. Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose, or the relief sought. Representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical.

41. Mcfadden's claims herein are typical of those of the Classes that Mcfadden seeks to represent. Mcfadden's and the Class members' claims arise from the same conduct of Empower Finance.

42. **Adequacy of Representation**. The final prerequisite under Rule 23(a) requires that the Court must be satisfied that the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). This overlaps in practice with the requirement under Rule 23(g) that class counsel must adequately represent the interests of the class. Fed. R. Civ. P. 23(g). Mcfadden is

an adequate representative of the Classes because her interests are common with the interests of the Classes, and Mcfadden will fairly and adequately protect the interests of the Classes by pursuing this matter. Mcfadden is represented by counsel competent and experienced in TCPA and class action litigation.

43.     **Predominance of Common Questions**. A plaintiff may bring a class action under Rule 23(b)(3) only where questions of law or fact common to the class predominate over questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). If liability can be determined at a class-wide basis, common issues predominate. This is true even if, at the damages stage, there remain non-injured class members and individualized damages calculations are required.

44.     **Superiority**. The final determination a court must make to certify a Rule 23(b)(3) class is that class action would be superior to individual actions in fairly and efficiently resolving the claims presented in this matter.

45.     In the present suit, the questions of law and fact common to the class members predominate over questions affecting only individual members. A class action is superior to multiple individual suits because it conserves judicial resources, promotes consistency and efficiency of adjudication, and deters illegal activities. The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Empower Finance are small because the damages in an individual action for violations of the TCPA are small. Mcfadden is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

46.     Managing this case as a class action should have no significant difficulties. Notice to class members can be provided by mail. The law applicable to each putative class member is identical. The facts are too. Ultimately, the basic questions in this case are the same for all class members. The common answer to

these questions will determine Empower Finance's liability. Precedent demonstrates these questions can be litigated on a class wide basis.

### FIRST CAUSE OF ACTION
### Illegal Solicitation of Persons on the DNCR
### (On Behalf of the DNCR Class)

47. Empower Finance violated 47 C.F.R. § 64.1200(c)(2) by initiating telephone solicitations to the residential cellular telephones of Mcfadden and members of the National DNCR Class while their phone numbers were on the national DNCR.

48. Mcfadden and members of the National DNCR Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. 47 U.S.C. § 227(c)(5).

49. The court should award $1,500 in statutory damages for each violation because the violations were knowing and willful. *Id.*

50. The court should enjoin Empower Finance from initiating telephone solicitations to phone numbers on the DNCR. *Id.*

### SECOND CAUSE OF ACTION
### Illegal Use of an ATDS
### (On Behalf of the ATDS Class)

51. Empower Finance violated 47 C.F.R. § 64.1200(a)(1)-(2) by using an ATDS to contact Mcfadden and members of the ATDS Class.

52. Mcfadden and members of the ATDS Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. 47 U.S.C. § 227(b)(3).

53. The court should award $1,500 in statutory damages for each violation because the violations were knowing and willful. *Id.*

54. The court should enjoin Empower Finance from using an ATDS to initiate text messages absent proper consent or an emergency. *Id.*

## THIRD CAUSE OF ACTION
### Failure to Identify
### (On Behalf of the Failure to Identify Class)

55. Empower Finance violated 47 C.F.R. § 64.1200(d)(4) by failing to disclose the name of the individual caller and the full name of Empower Finance on the text messages to Mcfadden and members of the Failure to Identify Class.

56. Mcfadden and members of the Failure to Identify Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. 47 U.S.C. § 227(c)(5).

57. The court should award $1,500 in statutory damages for each violation because the violations were knowing and willful. *Id*.

58. The court should enjoin Empower Finance to disclose the name of the individual caller and the name of Empower Finance on all telemarketing text messages. *Id*.

## RELIEF REQUESTED

Mcfadden respectfully requests the Court grant the following relief against Empower Finance:

A. Certification of the proposed Classes;

B. Appointment of Mcfadden as class representative;

C. Appointment of the undersigned as counsel for the Classes;

D. An order enjoining Empower Finance as set forth above;

E. An award of damages to Plaintiff and the Classes, as allowed by law; and

F. Orders granting such other relief as the Court deems necessary, just, and proper.

## JURY DEMANDED

Plaintiff requests a jury trial as to all claims of the Complaint so triable.

Dated: October 3, 2023            Respectfully submitted,

                                               /s/ *John Kauffman*
                                               John Kauffman
                                               Florida Bar No. 538205
                                               LawHQ, P.C.
                                               299 S. Main St. #1300
                                               Salt Lake City, UT 84111
                                               385-285-1090
                                               john.kauffman@lawhq.com

                                               *Attorney for Plaintiff and*
                                               *Lead Counsel for Proposed Classes*